**Electronically Filed
Supreme Court
SCWC-19-0000594
23-JUN-2021
10:56 AM
Dkt. 6 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellant,

vs.

NOGUCHI MILNE,
Petitioner/Defendant-Appellee.

_____

SCWC-19-0000594

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-19-0000594; CR. NO. 1FFC-19-0000573)

JUNE 23, 2021

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

In Count 1 of a complaint filed in the Family Court of the
First Circuit ("family court"), the State of Hawai'i ("the
State") charged Noguchi Milne ("Milne") with abuse of family or
household member, in violation of Hawai'i Revised Statutes
("HRS") § 709-906(1) and (5) (2014), against Complaining Witness

1

1 ("CW1").[1]  Count 2 charged Milne with third degree assault in violation of HRS § 707-712(1)(a) (2014) against Complaining Witness 2 ("CW2").[2]

The family court granted Milne's oral motion to dismiss Count 2, concluding it lacked subject matter jurisdiction over that count.  On appeal, the Intermediate Court of Appeals ("ICA") concluded the family court erred in dismissing Count 2 because the family court had concurrent subject matter jurisdiction over the charge based on HRS § 571-14(b) (2014).  The ICA ordered that Count 2 be remanded to the family court for further proceedings consistent with its memorandum opinion.

On certiorari, Milne concedes that the family court had concurrent jurisdiction over Count 2.  Milne argues, however, that the family court did not dismiss Count 2 based on a lack of subject matter jurisdiction.  He maintains the family court had

---

[1]     HRS § 709-906 states in relevant part:

> (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member or to refuse compliance with the lawful order of a police officer under subsection (4).  The police, in investigating any complaint of abuse of a family or household member, upon request, may transport the abused person to a hospital or safe shelter.
>
>         . . . .
>
> (5) Abuse of a family or household member and refusal to comply with the lawful order of a police officer under subsection (4) are misdemeanors[.]

[2]     HRS § 707-712(1)(a) states in relevant part: "(1) A person commits the offense of assault in the third degree if the person: (a) Intentionally, knowingly, or recklessly causes bodily injury to another person[.]"

discretion to decline the exercise of its concurrent jurisdiction over Count 2.

For the reasons explained below, we hold as follows: (1) the ICA was correct in ruling that the family court dismissed Count 2 for lack of subject matter jurisdiction and erred by doing so, as HRS § 571-14(b) provided the family court with concurrent subject matter jurisdiction over Count 2; and (2) the family court continues to have subject matter jurisdiction over Count 2 despite the dismissal of Count 1 with prejudice, and it is for the family court to address Count 2 on remand.

## II. Background

### A. Factual and procedural background

#### 1. Family court proceedings

On June 18, 2019, Milne was charged in the family court via complaint for events allegedly occurring on June 16, 2019, as follows: (1) Count 1, with respect to CW1, his girlfriend, abuse of family or household members in violation of HRS § 709-906(1) and (5); and (2) Count 2, with respect to CW2, CW1's father, third degree assault in violation of HRS § 707-712(1)(a).

At a trial call on July 22, 2019, the State requested a continuance because the complaining witnesses were not present

3

despite being subpoenaed.  The family court[3] orally granted the continuance over Milne's objection.  Milne then orally moved to dismiss Count 2 for lack of subject matter jurisdiction, asserting that the family court lacked subject matter jurisdiction because although CW1 was Milne's girlfriend, CW2, CW1's father, did not live or reside in the same household as Milne.  The State requested that the defense submit a written motion so it could appropriately respond, but the family court asked the State to "take a look at 571-14":

> THE COURT:  Can you take a look at 571-14, counsel? . . . .
>
>              . . . .
>
> THE COURT:  So look at subsection [](b),[4] counsel.
> [Deputy prosecuting attorney ("DPA")]:  And, your honor, under section [](b) the -- the court would have concurrent jurisdiction over the Assault Third given the -- it'd be one of the offenses in this case would be under the jurisdiction of Family Court, which would be the Count 1.
> THE COURT:  [Deputy public defender ("DPD")], your response to that, under subsection [](b)?
> [DPD]:  Your honor, and my response to that is that under subsection [](b) is that that's if it was as to pertaining to the same complaining witness.  However, in this matter the two different counts are represented by offenses, again two different complaining witnesses.  Therefore the court does not have jurisdiction over Count 2 relating to the second complaining witness.
> THE COURT:  And where do you get the limiting language that it has to relate to the same complaining witness?
> [DPD]:  Your honor, that -- I don't -- there is no limiting language but that is the defense's argument.

---

3     Unless otherwise indicated, the Honorable Kevin A. Souza presided.

4     HRS § 571-14(b) provides:

> (b) The court shall have concurrent jurisdiction with the district court over violations of sections 707-712, 707-717, 707-722, 708-822, 708-823, 710-1010.5, 711-1106, and 711-1106.5 when multiple offenses are charged through complaint or indictment and at least one offense is a violation of an order issued pursuant to chapter 586 or a violation of section 709-906.

4

> THE COURT:  [DPA]?
> [DPA]:  And, your honor, as the court stated there is no limiting language under 571-14[](b) as to limit or to distinguish that it had to be the same complaining witness. Just that one of the offenses charged through the complaint would be pursuant to chapter 586 (indiscernible).
> THE COURT:  All right.  And the complaining witness in Count 2, again, the representation of the defense is that the complaining witness is girlfriend's father?
> [DPA]:  That's correct.  That's accurate.

The family court then orally granted Milne's motion, stating:

> THE COURT:  All right.  The court reads 571-14 as permissive and not mandatory as to section (b), and because the complaining witness in Count 2 is not a family or household member to Mr. Milne, the court is, based on the representations of counsel, going to be dismissing Count 2 without prejudice and the State would be free to refile Count 2 in District Court as to that complaining witness. All right?

The family court filed its written order dismissing Count 2 on July 26, 2019 ("dismissal order"), which stated in relevant part:

> After consideration of the arguments of counsels, this Court granted the Defendant's oral motion to dismiss Count II for lack of Subject Matter Jurisdiction, and it is further ordered that Count II be dismissed without prejudice.
> IT IS HEREBY ORDERED that the Defendant's Oral Motion to dismiss Count II is GRANTED.  Furthermore, Count II is dismissed without prejudice for lack of Subject Matter Jurisdiction.

The State appealed the Count 2 dismissal order to the ICA on August 23, 2019.  At a September 16, 2019 trial call, CW1 and two other civilian witnesses, who were subpoenaed, failed to appear in court.  The State orally requested another continuance.  Milne objected and orally moved to dismiss Count 1

5

with prejudice. The family court[5] denied the request for a continuance and granted Milne's oral motion to dismiss Count 1 with prejudice.

Then, on November 22, 2019, the family court entered findings of fact and conclusions of law ("11/22/19 FOFs/COLs"). In its 11/22/19 FOFs/COLs, the family court maintained that even if it had jurisdiction over Count 2, the dismissal of Count 1 with prejudice rendered the State's appeal moot. It also opined that even if the State's appeal was successful, Count 2 should no longer be prosecuted in the family court, as it was not coupled with an offense over which the family court had exclusive, original jurisdiction. The family court also posited that the State's only option going forward was to proceed with Count 2 in the district court, as it had ordered in the dismissal order. It also maintained that any other outcome "would lead to the tortuous result of the Family Court being forced to proceed to trial on a single charge (Assault 3) over which it does not have exclusive, original jurisdiction – and between two parties who are not family or household members." The family court contended that the State's ongoing practice of using HRS § 571-14(b) to "bootstrap" additional cases involving non-family members threatened to transform the family court from

---

[5] The Honorable Brian A. Costa presided over the September 16, 2019 trial call.

(continued . . .)

a court of limited jurisdiction into one of general jurisdiction.[6]

## 2. ICA proceedings

On appeal to the ICA, in summary, the State argued that the family court erred as a matter of law by dismissing Count 2 for lack of subject matter jurisdiction. In response, Milne conceded the family court had concurrent jurisdiction over Count 2, but also asserted it was only as long as Count 1 was pending. Milne also contended the family court's decision to decline jurisdiction should be reviewed under the abuse of discretion standard, citing to NB v. GA, 133 Hawaiʻi 436, 329 P.3d 341 (App.

---

[6] The ICA did not address the merits of the family court's 11/22/19 FOFs/COLs on the grounds the family court lacked jurisdiction to enter them. State v. Milne, CAAP-19-0000594, 2020 WL 6375352 (App. Oct. 30, 2020) (mem.), at 7. The ICA noted that when an adult is charged with a crime, the Hawaiʻi Rules of Penal Procedure ("HRPP") govern. Milne, mem. op. at 7 n.9 (citing State v. Gonsales, 91 Hawaiʻi 446, 449, 984 P.2d 1272, 1275 (1999); Hawaiʻi Family Court Rules ("HFCR") Rule 81(c) (2015) ("Cases for adults charged with the commission of a crime coming within the jurisdiction of the family courts shall be governed by the [HRPP].")). The ICA cited to HRPP Rule 23(c), which provides for a court to make findings "[i]n a case tried without a jury" and if requested, to make special findings "at any time prior to sentence." Id. The ICA ruled HRPP Rule 23(c) did not authorize the 11/22/19 FOFs/COLs relating to the dismissal order; in short, the ICA concluded the family court did not have jurisdiction to enter the 11/22/19 FOFs/COLs related to the dismissal order, citing to HRPP Rule 23(c). Id. HRPP Rule 23(c), however, is part of the rule entitled "Trial by Jury or by the Court," and does not govern. Rather, as our family courts are a division of our circuit courts, see HRS § 571-3 (2006) ("The family courts shall be divisions of the circuit courts of the State and shall not be deemed to be other courts as that term is used in the State Constitution."), HRPP Rule 44A(a) (2011), pertaining to "Settlement of Findings of Fact, Conclusions of Law, and Order; Entry of Order" in the circuit courts, governs here. There has been no separate appeal of the 11/22/19 FOFs/COLs, and, as the ICA noted, none of the ICA briefs, all of which were filed after the 11/22/19 FOFs/COLs, mention the 11/22/19 FOFs/COLs. Id. We address the 11/22/19 FOFs/COLs later in this opinion.

(continued . . .)

7

2014).[7]  Milne asserted the family court had actually properly exercised its discretion to dismiss Count 2.

In its October 30, 2020 amended memorandum opinion, the ICA vacated the dismissal order, holding the family court erred by dismissing Count 2 for lack of subject matter jurisdiction. Milne, mem. op. at 6, 8.  The ICA noted Milne now appropriately conceded on appeal that the family court "had concurrent subject matter jurisdiction over Count 2 as long as Count 1 was pending."  Milne, mem. op. at 5.  The ICA explained that under the plain language of HRS § 571-14(b), the family court has concurrent jurisdiction with the district court over violations of specific offenses, including HRS § 707-712 (third degree assault), when multiple offenses are charged in a complaint or indictment and at least one offense is, inter alia, a violation of HRS § 709-906 (abuse of family or household members).  Id. The ICA reasoned that even if there was an ambiguity as to whether HRS § 571-14(b) limits charges of multiple offenses to

---

[7]    This case stated in relevant part:

> A family court's decision to decline jurisdiction is reviewed for abuse of discretion.  See Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) ("'[An appellate court] will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.'" (quoting In re Doe, 95 Hawaiʻi 183, 189-90, 20 P.3d 616, 622-23 (2001))).

NB, 133 Hawaiʻi at 444, 329 P.3d at 349.

the same complaining witness, its legislative history reflected otherwise. Id.; see Milne, mem. op. at 5-6; S. Stand. Comm. Rep. No. 2649, in 1998 Senate Journal, at 1071 ("For example, if a person assaults another individual while violating a family court restraining order, under current law the [] two violations of law would be heard in separate courts. Your Committee further finds that concurrent jurisdiction will make the judicial process in these instances more efficient and effective."). The ICA stated Act 64 of 1998, which added subsection (b) to HRS § 571-14, also showed the legislature intended to provide for concurrent jurisdiction, even when the multiple charged offenses involved different complaining witnesses. Milne, mem. op. at 5-6.[8]

The ICA noted Milne made speculative arguments on appeal as to why the family court allegedly decided not to exercise its concurrent jurisdiction, based on his assertion of different

---

[8]    The ICA also cited another committee report in support:

> Your Committee finds that one incident can give rise to several different charges. Some of these charges, like a violation of a family court restraining order or misdemeanor abuse of family and household member, fall under the jurisdiction of the family court, while others may fall under the jurisdiction of the circuit or district courts. Current law prevents the State from bringing all the related charges at one time before one court.
>     This bill addresses that problem by giving the circuit, district, and family courts concurrent jurisdictions over certain offenses[.]

Milne, mem. op. at 6 n.8 (quoting H. Stand. Comm. Rep. No. 1055-98, in 1998 House Journal, at 1482).

scenarios that could occur and purported inferences that had no basis on the record. Id.

The ICA filed its judgment on appeal on November 12, 2020, remanding the case to the family court for further proceedings consistent with its amended memorandum opinion.

### 3. Supreme court certiorari application

On certiorari, Milne presents the following question: "Whether the ICA committed grave error in concluding that the Family Court had jurisdiction over Count 2." Milne repeats his arguments made to the ICA. The State did not respond.

## III. Standards of review

### A. Statutory interpretation

> Statutory interpretation is a question of law reviewable de novo. In reviewing questions of statutory interpretation, we are guided by the following principles:
>
> > First, the fundamental starting point for statutory-interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

State v. Castillon, 144 Hawai'i 406, 411, 443 P.3d 98, 103 (2019) (cleaned up).

**B.    Subject matter jurisdiction**

"Whether a court possesses subject matter jurisdiction is a question of law reviewable de novo."  Kakinami v. Kakinami, 127 Hawai'i 126, 136, 276 P.3d 695, 705 (2012).

### IV.   Discussion

**A.    The ICA was correct in ruling that the family court dismissed Count 2 for lack of subject matter jurisdiction and erred by doing so, as HRS § 571-14(b) provided the family court with concurrent subject matter jurisdiction over Count 2**

At the ICA and again at this court, Milne concedes that the family court had concurrent jurisdiction over Count 2 based on HRS § 571-14(b).  The ICA correctly held that the family court had concurrent jurisdiction over Count 2.  HRS § 571-14(b) states:

> § 571-14.  Jurisdiction; adults
>
> . . . .
>
> (b) The court shall have concurrent jurisdiction with the district court over violations of sections 707-712, 707-717, 707-722, 708-822, 708-823, 710-1010.5, 711-1106, and 711-1106.5 when multiple offenses are charged through complaint or indictment and at least one offense is a violation of an order issued pursuant to chapter 586 or a violation of section 709-906.

The plain language of HRS § 571-14(b) provides the family court with "concurrent jurisdiction with the district court over violations of section[] 707-712[] . . . when multiple offenses are charged through complaint" and "at least one offense is a violation . . . of section 709-906."  Here, Milne was charged via complaint with a violation of HRS § 709-906 in Count 1.

11

Thus, based on the plain language of the statute, the family court had concurrent jurisdiction with the district court over Count 2 charging a violation of HRS 707-712.

Because the plain language of HRS § 571-14(b) is unambiguous, we need not turn to the next step of statutory interpretation, which is to ascertain and give effect to the intent of the legislature.  But as the ICA explained, even if the statute was ambiguous, the legislative history of HRS § 571-14(b) confirms legislative intent to provide for concurrent jurisdiction when charged offenses involved different individuals.  See Milne, mem. op. at 5-6.

Milne repeats his argument, however, that based on oral statements made before its ruling, the family court did not actually dismiss Count 2 based on a lack of subject matter jurisdiction.  Milne asserts the family court acknowledged it had concurrent subject matter jurisdiction but exercised discretion to decline concurrent subject matter jurisdiction.

Milne's assertions are devoid of merit.  The family court expressly stated it was dismissing Count 2 because the complaining witness was not the same person as that for the abuse charge in Count 1.  Also, as the ICA noted, Milne makes speculative arguments with no basis in the record as to why the family court allegedly decided not to exercise its concurrent

12

jurisdiction. But Milne's argument is problematic for additional reasons.

First, Milne suggests the family court had discretion to dismiss the concurrent charge and require that it be refiled in district court. Subject matter jurisdiction, however, is a matter of law, not a matter of discretion. Pursuant to article VI, section 1 of the Hawaiʻi Constitution, our state courts "have original and appellate jurisdiction as provided by law[.]" Through HRS § 571-14(b), the legislature provided our family courts with concurrent jurisdiction over certain matters. HRS § 571-8.5(a)(3) (2018) provides that a family court judge may "[m]ake and issue all orders and writs necessary or appropriate in aid of their original jurisdiction." (Emphasis added.) And, in general, "[i]t is a judge's duty to decide all cases within [the judge's] jurisdiction that are brought before [the judge.]" Pierson v. Ray, 386 U.S. 547, 554 (1967) (emphasis added).[9]

Second, contrary to Milne's assertion that the family court exercised discretion to dismiss Count 2, the family court expressly stated in its dismissal order that it dismissed Count 2 for lack of subject matter jurisdiction. As explained, this written ruling was actually consistent with the family court's

---

[9]    See infra note 11 for an exception to the general rule.

13

oral ruling. But even if the written order had been inconsistent with the oral ruling, as the ICA has repeatedly stated, a trial court's written order controls over its oral statements.[10] On this point, we agree with authority cited by the ICA in its rulings that a judge's written order generally controls over its oral statements. See Nat'l Home Centers, Inc. v. Coleman, 257 S.W.3d 862, 863 (Ark. 2007) ("If a trial court's ruling from the bench is not reduced to writing and filed of record, it is free to alter its decision upon further consideration of the matter. Simply put, the written order controls." (cleaned up)); Owens v. Magill, 419 S.E.2d 786, 791 (S.C. 1992) (holding that a judge was not bound by prior oral ruling and could issue written order which conflicted with prior oral ruling); Ladd by Ladd v. Honda Motor Co., Ltd., 939 S.W.2d 83, 104 (Tenn. Ct. App. 1996) ("A court speaks only through its written orders."); Ratcliff v. Cyrus, 544 S.E.2d 93, 96 n.14 (Va. 2001) ("[W]hen presented with conflicting signals from a circuit court, the law favors written orders over oral statements.").

---

[10] See, e.g., State v. Zhang, CAAP-19-0000338, 2020 WL 733971, at *3 (App. Feb. 13, 2020) (SDO) ("The written order controls over the oral statements the District Court made at the March 13, 2019 hearing." (citing Kono v. Abercrombie, CAAP-11-0000755, 2013 WL 1758960, at *4 (App. Apr. 24, 2013) (mem.)).

(continued . . .)

The family court's written order expressly dismissed Count 2 for an alleged lack of subject matter jurisdiction; this order controls.  For this reason also, we reject Milne's argument that the family court declined to exercise concurrent jurisdiction based on other considerations.[11]

Hence, the ICA correctly ruled that the family court dismissed Count 2 for lack of subject matter jurisdiction and erred by doing so.

**B.  The family court continues to have subject matter jurisdiction over Count 2 despite the dismissal of Count 1 with prejudice, and it is for the family court to address Count 2 on remand**

In its amended memorandum opinion, the ICA indicated Milne had properly conceded on appeal that the family court "had concurrent subject matter jurisdiction over Count 2 <u>as long as Count 1 was pending</u>."  <u>Milne</u>, mem. op. at 5 (emphasis added).  The ICA's judgment on appeal then remanded Count 2 to the family court for further proceedings consistent with its memorandum opinion.

---

[11]    Also, as the ICA reasoned, <u>NB</u>, the case Milne cites in support of his argument that the abuse of discretion standard of review applies, is distinguishable.  In <u>NB</u>, the ICA vacated the family court's decision to decline jurisdiction based on its lack of findings on the statutory factors to determine whether Hawai'i was an inconvenient forum pursuant to HRS § 583A-207 (2016), which reads in relevant part: "A court of this State which has jurisdiction under this chapter to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum."  133 Hawai'i at 443-44, 329 P.3d at 348-49.  Here, not only did the family court's written dismissal order state it dismissed Count 2 for lack of subject matter jurisdiction, HRS § 571-14(b) does not give the family court discretion to decline jurisdiction, unlike the statute at issue in <u>NB</u>.

15

As noted, however, after the State's August 23, 2019 notice of appeal to the ICA of the Count 2 dismissal order, the family court granted Milne's motion to dismiss Count 1 with prejudice. It is unclear whether the ICA agreed with Milne's concession on appeal that the family court had concurrent subject matter jurisdiction over Count 2 as long as Count 1 was pending, and Count 1 is no longer pending.

Also after the notice of appeal, the family court entered its 11/22/19 FOFs/COLs stating its apparent positions with respect to Count 2.  Based on the importance of the issues presented in the 11/22/19 FOFs/COLs, pursuant to our supervisory powers under HRS § 602-4 (2016),[12] we provide guidance to the family court on remand.

First, in its 11/22/19 FOFs/COLs, the family court maintained that even assuming it had jurisdiction over Count 2, the dismissal of Count 1 with prejudice rendered the State's appeal moot.  It can be inferred from this that the family court is under the impression that its subject matter jurisdiction over Count 2 disappeared with the dismissal of Count 1.  The family court's concurrent subject matter jurisdiction over Count 2 did not disappear, however, when Count 1 was dismissed.

---

[12]    HRS § 602-4 provides, "**Superintendence of inferior courts.**  The supreme court shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law."

Under HRS § 571-14(b), the family court's concurrent subject matter jurisdiction over Count 2 was invoked when assault was charged along with the HRS § 709-906 abuse charge in Count 1.  See HRS § 571-14(b) ("The court shall have concurrent jurisdiction with the district court over [a] violation[] of section[] 707-712 . . . when multiple offenses are charged through complaint [] and at least one offense is . . . a violation of section 709-906." (emphasis added)). HRS § 571-14(b) does not require the abuse or restraining order charge continue to be pending for subject matter jurisdiction to continue over a concurrent charge.  Nothing in the legislative history of Act 64 of 1998 indicates the legislature so intended, and such a result would be absurd.  If subject matter jurisdiction over a concurrent charge disappears upon dismissal of the abuse or restraining order charge, double jeopardy issues would arise for the concurrent charge if a judge dismisses the abuse or restraining order charge after commencement of trial. In addition, if dismissal of or judgment upon a plea to an abuse or restraining order charge eliminated family court jurisdiction over a concurrent charge, statute of limitations issues could arise for refiling in district court.  In summary, despite the

17

family court's dismissal of Count 1, its subject matter jurisdiction over Count 2 continues.[13]

Second, the family court indicated that if the State's appeal was successful, Count 2 should no longer be prosecuted in the family court, as it would no longer be coupled with an offense over which the family court had "exclusive," original jurisdiction. Contrary to the family court's statement, after Act 64 of 1998, the family court no longer has "exclusive" original jurisdiction over HRS § 709-906 charges in certain circumstances, such as those here. Act 64 of 1998 amended HRS § 571-14 to add the underlined language:

> (a) Except as provided in sections 603-21.5 and 604-8, the court shall have exclusive original jurisdiction:
>
> (1) To try any offense committed against a child by the child's parent or guardian or by any other person having the child's legal or physical custody, and any violation of section 707-726, 707-727, 709-902, 709-903, 709-903.5, 709-904, 709-905, 709-906, or 302A-1135, whether or not included in other provisions of this paragraph or paragraph (2)[.]

1998 Haw. Sess. Laws Act 64, § 1 at 143. The amendments to HRS §§ 603-21.5 and 604-8 reciprocally provided the circuit and district courts with concurrent jurisdiction with the family courts over crimes over which the family courts previously had

---

[13] Also, even if the dismissal of Count 1 had rendered the appeal of the Count 2 dismissal moot, exceptions to the mootness doctrine would most likely have applied. See State v. Tui, 138 Hawai'i 462, 467-68, 382 P.3d 274, 279-80 (2016).

(continued . . .)

18

exclusive original jurisdiction, when concurrently charged with certain crimes in those courts.[14]

Third, the family also stated in its 11/22/19 FOFs/COLs that the State's only option going forward was to proceed with Count 2 in the district court, as it had ordered in the dismissal order.  The legislature, however, promulgated Act 64 of 1998 to further judicial efficiency.  See S. Stand. Comm. Rep. No. 2649, in 1998 Senate Journal, at 1071 ("Your Committee

---

[14]    In relevant part, Act 64 of 1998 amended HRS § 603-21.5 to add the underlined language:

> (b)  The several circuit courts shall have concurrent jurisdiction with the family court over:
>
> (1)  Any felony under section 571-14, violation of an order issued pursuant to chapter 586, or a violation of section 709-906 when multiple offenses are charged through complaint or indictment and at least one other offense is a criminal offense under subsection (a)(1); and
> (2)  Any felony under section 571-14 when multiple offenses are charged through complaint or indictment and at least one other offense is a violation of an order issued pursuant to chapter 586, a violation of section 709-906, or a misdemeanor under the jurisdiction of section 604-8.

1998 Haw. Sess. Laws Act 64, § 1 at 143-44.

In relevant part, Act 64 of 1998 amended HRS § 604-8 to add the underlined language:

> (b)  The district court shall have concurrent jurisdiction with the family court of any violation of an order issued pursuant to chapter 586 or any violation of section 709-906 when multiple offenses are charged through complaint or indictment and at least one other offense is a criminal offense within the jurisdiction of the district courts.

1998 Haw. Sess. Laws Act 64, § 3 at 144.

The ICA erred to the extent that it stated the circuit court did not get concurrent jurisdiction over the specified offenses in the family and district courts.  See Milne, mem. op. at 6 n.8.

further finds that concurrent jurisdiction will make the judicial process [] more efficient and effective."). Requiring Count 2 to be refiled in district court is not only inefficient, but as noted, a court has a duty to decide all cases within its jurisdiction that are brought before it.

Fourth, according to the family court, any outcome other than requiring that Count 2 be dismissed then refiled in the district court "would lead to the tortuous result of the Family Court being forced to proceed to trial on a single charge (Assault 3) over which it does not have exclusive, original jurisdiction – and between two parties who are not family or household members." The family court objects to the State's reliance on HRS § 571-14(b) to allegedly "bootstrap" additional cases involving non-family members, which it apparently believes threatens to transform the family court from a court of limited jurisdiction into a court of general jurisdiction.

Contrary to the family court's statements, however, it is appropriate for our family courts to address various charges arising out of the same domestic violence event, even if the complaining witness is not a family or household member or petitioner. Family court judges are knowledgeable about and receive specialized training on various issues and concerns arising out of domestic violence. In addition, Act 64 of 1998, of which the amendment to HRS § 571-14(b) is only a part,

20

greatly improved inefficiencies and redundancies that previously existed for prosecutors, defendants, witnesses, and the courts. Before Act 64 of 1998, there were many situations in which charges involving different victims in the same domestic violence event had to be filed separately in circuit, family, or district courts due to their respective jurisdictional limitations.  This meant that different prosecutors and courts would be required to address the same event, while defendants, complaining witnesses, and other eyewitnesses,[15] including law enforcement, could be subpoenaed to appear in different courts on different days for charges arising out of the same event. Due to the confusing nature of the charges and courts, and due to impracticalities, some charges were therefore dismissed and some possible charges were never brought.  And contrary to the family court's apparent belief that Act 64 of 1998 only requires the family court to address additional charges over which it previously lacked jurisdiction, Act 64 of 1998 also allowed criminal charges that were previously required to be brought in family court to be brought in circuit and district courts.[16] This means that the circuit and district courts also now preside

---

[15]    The "complaining witness" in one court could become an "eyewitness" in another court.

[16]    See supra note 14.

(continued . . .)

over charges that previously would have been handled by the family courts.[17]

Therefore, under the circumstances of this case, it is for the family court to address Count 2 upon remand.[18]

## V. Conclusion

For the reasons stated above, the ICA's judgment on appeal is affirmed, as clarified by this opinion.

| | |
|---|---|
| William H. Jameson, Jr., for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Chad M. Kumagai (on the briefs), for respondent | /s/ Sabrina S. McKenna |
| | /s/ Michael D. Wilson |
| | /s/ Todd W. Eddins |

---

[17] For example, the ICA previously ruled in State v. Dela Cruz, CAAP-11-0000367, 2013 WL 275547, at *1 (App. Jan. 24, 2013) (SDO), that the district court erred by dismissing a HRS § 709-906 charge over which the district court had concurrent jurisdiction pursuant to HRS § 604-8(b). This court accepted certiorari only to address the ICA's reliance on the plain error doctrine in making this ruling; we determined that the State had preserved the error by timely appealing the dismissal. State v. Dela Cruz, SCWC-11-0000367, 2014 WL 783148, at *2 (Haw. Feb. 27, 2014) (mem.). The ICA's substantive ruling regarding the district court's error in dismissing the abuse charge for lack of subject matter jurisdiction was affirmed. Id.

[18] We cannot envision all possibilities, and we therefore do not intend to foreclose all possibility of a family court dismissing a concurrent count. We merely rule that it cannot do so for an alleged lack of subject matter jurisdiction or for the reasons stated in its 11/22/19 FOFs/COLs.